UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -  X

UNITED STATES OF AMERICA          :

     - V. -                         :

                             S1 11 Cr. 370 (HB)

ADRIAN BUSBY,                     :

        Defendant.               :

- - - - - - - - - - - - - -  X


**GOVERNMENT'S OPPOSITION TO
THE DEFENDANT'S MOTION IN LIMINE**


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of
    America


Sarah E. McCallum
Alvin L. Bragg
Assistant U.S. Attorneys
   - Of Counsel -

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the defendant's motion in limine, which was filed on October 21, 2011.

As set forth in the Superseding Indictment and the Government's Pretrial Memorandum, the Government intends to prove, among other things, that defendant Adrian Busby, a Special Agent with the Federal Bureau of Investigation ("FBI"): (i) had a sexual relationship with Yanet Salazar, an FBI confidential source; (ii) provided confidential law enforcement reports (the "Reports") to a lawyer representing Salazar in a state identity theft case; and (iii) thereafter lied to the FBI, federal investigators, and a federal prosecutor about having provided the lawyer with the Reports.

On or about the same day that Busby gave the Reports to Salazar's lawyer, Busby took another step to influence Salazar's state case: He telephoned Thomas McCullough, a lawyer for Salazar's co-defendant, who had just pleaded guilty to the state charges. Busby, on his call with McCullough, threatened to have federal charges brought against Salazar's co-defendant.[1]

---

[1] After Salazar's state trial, Busby contacted and interviewed a key witness at that trial, Aurora Solano. The Government has evidence that, during the interview, Busby made veiled threats concerning Solano's immigration status. The Government has agreed with defense counsel not to elicit, in its case-in-chief, evidence about these threats, but has also informed the defense that it may seek to introduce evidence that the interview took place. The Government's understanding is that the defense does not, at this time, object to the introduction of evidence about the occurrence of this interview.

1

Citing Federal Rules of Evidence 402, 403, and 404(b), the defense argues that evidence concerning Busby's contact with McCullough is inadmissible "other act" evidence.  As explained below, however, Busby's contact with McCullough is not "other act" evidence at all; it is admissible, <u>direct</u> evidence of the charged false statements concerning the Reports.  The defense's arguments to the contrary appear to rest principally on (1) the misguided belief that Busby's contact with McCullough occurred at a time distant from the events at the heart of this case; and (2) a failure to acknowledge that Busby's contact with McCullough tends to disprove Busby's own claim -- his lie -- that he never intentionally assisted Salazar by giving the Reports to Nir.

<b><u>FACTUAL BACKGROUND</u></b>

On November 30, 2009, jury selection began in Salazar's state criminal trial.  That same day, Salazar's co-defendant, Elba Garcia, pleaded guilty.  Prior to and around this time, Busby furnished Salazar's criminal defense lawyer, Ronald Nir, with confidential FBI information that Busby believed would help Salazar's defense.  Near the beginning of the trial, Nir sought to obtain from Busby reports memorializing this confidential FBI information.

Between in or about December 1 and 3, 2009, Busby gave Nir the Reports.  On December 1, 2009, Busby sent Nir a text

message that stated in part: "I heard you r in need of docs? FYI.  You should discuss it on a line n not txt, as txts r discoverable material n can be tracked."  On December 2 and 3, 2009, Busby and Nir, via text messages, had additional discussions about the state case and the Reports in particular. In one text message, Busby wrote to Nir, in part, "U have the statements from before."  Nir responded, "I don't have these statements.  Can u fax them."  Busby replied, "The last time we met I gave u all those docs."

After Garcia's plea, Busby made a series of unsolicited calls to her counsel, Thomas McCullough, during which Busby gave McCullough daily updates about the trial.  On or about December 3, 2009, Busby called McCullough, Garcia's lawyer, and told him, among other things, that Busby was taking the case personally, that Garcia should not have pleaded guilty, and that Garcia must submit to an interview by Busby or face federal arrest.  Garcia was never arrested in connection with the federal investigation.

On or about December 15, 2009, the state jury returned a guilty verdict against Salazar.  In the wake of that conviction, the U.S. Attorney's Office for the Eastern District of New York ("EDNY") learned that Nir had used the Reports at Salazar's trial.  Representatives from the EDNY further learned that the reports had come from Busby.  When confronted, Busby

3

repeatedly denied that he had intentionally supplied Nir with the Reports.  One such denial, contained in an FBI Electronic Communication ("EC") written by Busby and dated December 22, 2009, forms the basis for Count Two of the Superseding Indictment.

In early 2010, the Department of Justice's Office of Investigation ("DOJ-OIG") had begun to consider Busby's actions. The investigation had progressed toward its final stages when, on April 8, 2011, Busby availed himself of the opportunity to speak with representatives of DOJ-OIG and the U.S. Attorney's Office for the Southern District of New York ("this Office"). During that interview, Busby falsely stated that he did not intentionally give the Reports to Nir.  (This false statement forms the basis for Count Four of the Superseding Indictment.) Busby further claimed that his text message stating "I heard you r in need of docs?" was not a reference to the reports Nir used at trial.  Busby also denied that he ever tried to assist Salazar in her defense of the state identity theft charges.

## ARGUMENT

### I.   EVIDENCE OF BUSBY'S CONTACT WITH MCCULLOUGH IS ADMISSIBLE AS DIRECT EVIDENCE OF COUNTS TWO AND FOUR

Evidence of an uncharged crime or bad act is not considered "other act" evidence if it: (1) "arose out of the same transaction or series of transactions as the charged

offense"; (2) "is inextricably intertwined with the evidence regarding the charged offense"; or (3) "is necessary to complete the story of the crime on trial." United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997) (internal quotations and alterations omitted); see United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (evidence of uncharged falsification of business inventory admitted to prove charged crime of making false statements to obtain a line of credit). Evidence of any of the foregoing may be admitted without regard to Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)"). See, e.g., United States v. Kaiser, 609 F.3d 556, 570 (2d Cir. 2010); United States v. Rigas, 490 F.3d 208, 238-39 (2d Cir. 2007).

Busby's contact with McCullough arose out of the same set of facts as the conduct charged in Counts Two and Four and is necessary to complete the story underlying these counts. Busby engaged in a series of abuses of his power in order to influence Salazar's state case. Prior to Salazar's trial, Busby repeatedly told Nir confidential details about an FBI investigation. Then, at the beginning of the trial, Busby took the additional steps of providing Nir with the Reports and -- around the very same time -- threatening Garcia through McCullough. Busby's threat, as part of this series of improper conduct, "tends to prove" that Busby actually did intentionally give Nir the Reports and, therefore, lied when he claimed not to

have done so.  United States v. Brady, 26 F.3d 282, 287 (2d Cir.
1994).  Thus, Busby's contact with McCullough is direct proof of
Counts Two and Four, which charge that Busby falsely stated that
he had not intentionally provided Nir with the Reports.

## II.  IN THE ALTERNATIVE, BUSBY'S CONTACT WITH MCCULLOUGH IS ADMISSIBLE UNDER RULE 404(B)

Even if the Court were to find that Busby's contact
with McCullough constitutes an "other act" rather than direct
evidence of Counts Two and Four, the Government should still be
permitted to introduce evidence of this conduct pursuant to Rule
404(b), because it is being offered to demonstrate, among other
things, absence of mistake or accident.

Federal Rule of Evidence 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not
admissible to prove the character of a person in order
to show action in conformity therewith.  It may,
however, be admissible for other purposes, such as
proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or
accident....

The Second Circuit "follow[s] an inclusionary rule, allowing the
admission of such evidence for any purpose other than to show a
defendant's criminal propensity, as long as the evidence is
relevant and satisfies the probative-prejudice balancing test of
Rule 403 of the Federal Rules of Evidence." United States v.
Inserra, 34 F.3d 83, 89 (2d Cir. 1994).  Evidence of prior acts
is admissible under Rules 404(b) and 403 if it is (1) advanced

6

for a proper purpose; (2) relevant to the crimes for which the defendant is on trial; (3) more probative than prejudicial; and (4) if requested, admitted subject to a limiting instruction. See United States v. Brand, 467 F.3d 179, 196 (2d Cir. 2006).

Here, Busby has claimed that he accidentally left the Reports with Nir, and that he never tried to help Salazar with her state charges. His contact with McCullough -- another attempt to assist the Salazar defense at essentially the same time -- helps negate Busby's claim of mistake and give the lie to his denial of assistance.

Further, this evidence is not unfairly prejudicial under Rule 403. Evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Figueroa, 618 F.2d 934, 943 (2d Cir.1980) (emphasis added); see also United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir.1990) (holding that evidence of similar acts was not unfairly prejudicial where it was not "any more sensational or disturbing than the crimes" with which the defendant was charged). That certainly is not the case here. Contrary to the defendant's assertion (see Defendant's Motion In Limine at 7), the risk that the jury will use the evidence of Busby's contact with McCullough to conclude that Busby had a propensity to commit the charged offenses

7

(false statements) is non-existent, because the McCullough
contact evidence simply is not evidence of lying.  Nor is the
proposed evidence inflammatory in any other respect.  The
evidence of the McCullough contact reflects conduct no more
egregious than the charged false statements themselves; it is
integral to two of the charges; and its admission will have no
adverse effect upon Busby beyond tending to prove that Busby is
guilty of the crimes charged.

Dated:    New York, New York
          October 23, 2011


                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney


                         By: _____/s/_____
                              SARAH E. MCCALLUM
                              ALVIN L. BRAGG


8