**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**500 Pearl Street**
**New York, New York 10007**

----------------------------------------------------X
UNITED STATES OF AMERICA,

Docket No.: S1 11 CR 370 (HB)

-vs.-

ADRIAN BUSBY,

Defendant.

Hon.: Harold Baer, Jr.

----------------------------------------------------X

---

**DEFENDANT'S OBJECTIONS TO PSR AND SENTENCING BRIEF**

---

Now, Comes the Defendant, ADRIAN BUSBY, by and through his attorney, DENIS P. McALLISTER, Esq. and does hereby submit the following as and for his objections to the PreSentence Report and Sentencing Brief:

**Base Offense Level.**

Mr. Busby objects to the Probation Department's reliance on **§2J1.2(a)** of the Federal Sentencing Guidelines (hereinafter referred to as "USSG" or the "Guidelines") as the base offense level that should apply in the instant case; the "obstruction of justice" guidelines.

The PSR correctly points out that convictions for false statement (18 U.S.C. §1001) fall within USSG §2B1.1. However, where the Probation Department takes a wrong turn in the PSR is in its use of the cross-reference section of the USSG; §2B1.1(c)(2)(3). The application of §2B1.1(c)(2)(3) of the USSG to the facts of Mr. Busby's case is inapposite.

Presumably, Your Honor is going to conduct an exercise in which you seek the most

applicable base offense level to the counts of conviction of Mr. Busby. All of the counts of conviction in this case are for False Statement* in violation of 18 U.S.C. §1001.

We are aware that the application of the USSG is no longer compulsory. *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). However, we are assuming that Your Honor will look to the USSG for guidance on the application of an appropriate sentence for Mr. Busby.

Since Mr. Busby was found guilty of four (4) counts of False Statement the appropriate base offense level is found at §2B1.1(a)(2) of the USSG. The base offense level is, thus, six (6). §2B1.1 is the applicable offense guideline based upon the counts of conviction for false statement.

Section 2B1.1(c)(2)(3) of the USSG permits reliance on a <u>different</u> guideline only if the conduct set forth in the count of conviction can establish the different offense covered by the other guideline. This is consistent with §1B1.2 of the USSG which generally requires the sentencing court to use the guideline associated with the offense of conviction. The elements of obstruction of justice can **not** be made out from any of the four (4) counts of conviction in Mr. Busby's case. As such, use of §2J1.2 of the USSG for establishing the base offense level in this case is misguided.

It is beyond dispute that obstruction of justice is a more serious offense than false statement. That is why the USSG base offense level for obstruction of justice is set at level 14.

In fact, none of Mr. Busby's false utterances caused any interference in the federal Government's investigation into Mr. Busby and his activities vis a vis the Confidential Human Source (hereinafter referred to as the "CHS") and her criminal defense attorney, Ronald Nir.

* **Currently, USSG §2B1.1 is the Base Offense Guideline for false statement convictions. Previously, USSG §2.F was the guideline for offenses involving Fraud and Deceit. However, §2.F of USSG has been deleted and replaced with §2B1.1.**

The Department of Justice's Office of the Inspector General (hereinafter referred to as "DOJ/OIG") and the United States Attorneys Office (hereinafter referred to as "USAO") already was in possession of text messages between Mr. Busby and the CHS's defense attorney, which were of an inculpatory nature with respect to Counts Two and Four of the subject indictment.

Mr. Busby's actions (through false statements) did **not** have the affect of impeding the DOJ/OIG's investigation into his knowledge of the CHS' status (i.e. under criminal investigation, etc.) at the time that Mr. Busby opened her as a CHS for the Federal Bureau of Investigation (hereinafter referred to as "FBI"). See Count One.

Likewise, with respect to Counts Two and Four, the DOJ/OIG and USAO had copies of the FD-302s turned over to defense attorney Ronald Nir at the time that Mr. Busby uttered the false statement that he did not intentionally provide the subject 302s to the CHS's defense attorney.

Nothing uttered by Mr. Busby significantly obstructed or impeded the investigation into Mr. Busby's conduct by the DOJ/OIG or the USAO. Therefore, the use of the obstruction guideline's base offense level is inappropriate. Stated another way, the essential elements of obstruction of justice are **not** made out in the counts of conviction in the matter of U.S. v. Busby. Something which is necessary in order to cross reference to the obstruction guidelines.

The nature of the convictions of Mr. Busby are for non-custodial denials of culpability for non-criminal misconduct. Simply put, lies to the DOJ/OIG and USAO. Counts Three and Four are a reiteration of the False Statements contained within Counts One and Two only uttered on a subsequent occasion, (April 8, 2011).

We therefore object to the PSR in its reliance on **§2J1.2(a)** of USSG Guidelines to determine the base offense level in Mr. Busby's criminal matter.

Mr. Busby respectfully requests that Your Honor utilize §2B1.1(a)(2) of the USSG when

arriving at the appropriate base offense level. That base offense level is level 6.

**Defendant's Motion For Downward Departure.**

At the date set for sentence pronouncement Mr. Busby will be moving for a downward departure from the total guideline offense level determined by Your Honor. The nature of the downward departure request is due to Mr. Busby's extraordinary family circumstances.

In the post *Booker* world there is no presumption, rebuttable or otherwise, that a Guidelines sentence is reasonable and the court may not presume that a Guidelines range is reasonable. See *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007). The court must conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and the defense. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008).

As the PSR accurately points out, Mr. Busby is a divorced father of three (3) children; all of whom have been diagnosed as suffering from attention deficit hyperactivity disorder (hereinafter referred to as "ADHD") and Neurofibromatosis (Type I). The children are all the product of the marital union between Mr. Busby and his then wife, Virginia Dawn Busby.

Mr. and Mrs. Busby were divorced on August 16, 2010. Annexed hereto as Attachment A is a copy of the New York State Divorce Judgment (hereinafter referred to as "Judgment"). The Judgment demonstrates that Mr. Busby (as Plaintiff) was awarded custody of Xavier Marquis Busby (9 years old), Zander Avery Busby (6 years old), and Keagen Donovan Busby (4 years old).

For the most part the children's mother has all but abandoned the children to the exclusive care of their father; Mr. Busby. In fact, the last time that Mr. Busby and the children actually saw the kids' mom was some time in July of 2010. Mr. Busby does not know where the children's mother currently resides. Furthermore, the mother has ceased all contact with the children and has previously

communicated to Mr. Busby that she is not in a position to care for the children.

The PSR reflects that Mr. Busby's current girlfriend (Adriana Perez) has communicated an interest in taking temporary custody of Mr. Busby's three (3) children, (in the event of Mr. Busby's incarceration). However, the reality of Ms. Perez actually undertaking such an enormous, burdensome task (taking care of 3 children with ADHD and Neurofibromatosis) in addition to taking care of two (2) of her own children is not very likely. We are sure that Ms. Perez is well intentioned. The reality of caring for such special needs kids without Mr. Busby's assistance would most likely overwhelm Ms. Perez and she would have to ultimately bow out from such a taxing obligation.

Mr. Busby is clearly, the sole care-giver for the subject three (3) children. Incarcerating Mr. Busby would place his children at even greater risk of developmental delay and trauma. During the last two years they have had their father, exclusively, providing them with financial and emotional support.

Based upon the guidelines range that we have suggested to Your Honor Mr. Busby would be eligible for home confinement as an alternate sentence to a period of incarceration with the Bureau of Prisons (hereinafter referred to as "BOP"). Such a restriction on Mr. Busby's liberty would not be trivial. Mr. Busby's fall from grace (by virtue of his conviction) is particularly steep when one considers that he was a criminal investigator for the most prominent law enforcement agency in the world and has disgraced himself and his family by virtue of his criminal actions.

Additionally, Mr. Busby served this country honorably in the military prior to his fall from grace. This is another factor we wish Your Honor to remain mindful of.

The FBI is currently in the process of terminating Mr. Busby's employment with the Agency. Additionally, Mr. Busby has been in a non-pay status since the time of his arrest on the underlying charges for which he stands convicted.

§5H1.1,4,6,11 of the USSG allows for downward departures based upon conditions such as age, health, family ties, or community involvement only when these issues are present in "unusual" or "extraordinary" cases. In Mr. Busby's circumstances we respectfully suggest that such factors are present to an extraordinary degree with respect to his three (3) special needs children.

Those circumstances are captured in the PSR and in the argument above.

We wish to apprise Your Honor that the chance of recidivism with respect to Mr. Busby is genuinely not existent. Mr. Busby's conviction stems from his interactions with other federal Government employees. Because Mr. Busby is soon to be separated from his position with the federal Government he will not have an opportunity to provide false statements to a federal Agency.

The USAO is not expected to be heard at sentencing to argue that Mr. Busby presents a danger to the community. Nor do we expect that Your Honor will have any such preoccupations of the same.

Lastly, some of Mr. Busby's friends and family felt a desire to explain their personal thoughts about Mr. Busby and asked to be permitted to express themselves to Your Honor in that regard. We ask that Your Honor give these letters favorable consideration. Therefore, annexed hereto as "Attachment B" is a collection of letters from four (4) individuals.

**Request for Designation.**

In the event that Your Honor is inclined to Order Mr. Busby to a period of incarceration we would respectfully request that Mr. Busby be requested for designation to FCI La Tuna. We are well aware of the limitations on Your Honor's request to designate and are aware that any such request in Mr. Busby's Judgment of Sentence would not be binding on the BOP. However, to the extent that such a designation is not inconsistent with BOP policy an Order from Your Honor may hold

sufficient influence with the BOP.

FCI La Tuna is a series of low security facilities located approximately 12 miles north of Mr. Busby's current home of El Paso, Texas. This very close proximity of FCI La Tuna to Mr. Busby and his children's family residence may facilitate frequent visits between father and sons and help maintain the family bonds.

Dated: March 29, 2012.

Respectfully submitted,

/s/--------------------------------
Denis P. McAllister, Esq.
Attorney for Defendant
70 Glen Street, Suite 280
Glen Cove, New York 11542
Tel.# (516) 671-2688

To: AUSA Sarah McCallum
    AUSA Alvin Bragg
    P.O. Michele Greer Bambrick

At the *Matrimonial/IAS* Part 55 of the New York State Supreme Court at the Courthouse, Queens County, on the 16th day of August, 2010

MARY ELLEN FITZMAURICE

QUEENS COUNTY CLERK FILED RECORDED 2011 JAN 10 AM 9:11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

Adrian Emmerson Busby,

Plaintiff,

-against-

Virginia Dawn Busby,

Defendant.

Index No. 12760/10

JUDGMENT OF DIVORCE

Present:
Hon. MARY ELLEN FITZMAURICE
J.S.C.

THE FOLLOWING NOTICE IS ☐ *APPLICABLE* OR ☒ *NOT APPLICABLE*

NOTICE REQUIRED WHERE PAYMENTS THROUGH SUPPORT COLLECTION UNIT

NOTE: (1) THIS ORDER OF CHILD SUPPORT SHALL BE ADJUSTED BY THE APPLICATION OF A COST OF LIVING ADJUSTMENT AT THE DIRECTION OF THE SUPPORT COLLECTION UNIT NO EARLIER THAN TWENTY-FOUR MONTHS AFTER THIS ORDER IS ISSUED, LAST MODIFIED OR LAST ADJUSTED, UPON THE REQUEST OF ANY PARTY TO THE ORDER OR PURSUANT TO PARAGRAPH (2) BELOW. UPON APPLICATION OF A COST OF LIVING ADJUSTMENT AT THE DIRECTION OF THE SUPPORT COLLECTION UNIT, AN ADJUSTED ORDER SHALL BE SENT TO THE PARTIES WHO, IF THEY OBJECT TO THE COST OF LIVING ADJUSTMENT, SHALL HAVE THIRTY-FIVE (35) DAYS FROM THE DATE OF MAILING TO SUBMIT A WRITTEN OBJECTION TO THE COURT INDICATED ON SUCH ADJUSTED ORDER. UPON RECEIPT OF SUCH WRITTEN OBJECTION, THE COURT SHALL SCHEDULE A HEARING AT WHICH THE PARTIES MAY BE PRESENT TO OFFER EVIDENCE WHICH THE COURT WILL CONSIDER IN ADJUSTING THE CHILD SUPPORT ORDER IN ACCORDANCE WITH THE CHILD SUPPORT STANDARDS ACT.

(2) A RECIPIENT OF FAMILY ASSISTANCE SHALL HAVE THE CHILD SUPPORT ORDER REVIEWED AND ADJUSTED AT THE DIRECTION OF THE SUPPORT COLLECTION UNIT NO EARLIER THAN TWENTY-FOUR MONTHS AFTER SUCH ORDER IS ISSUED, LAST MODIFIED OR LAST ADJUSTED WITHOUT FURTHER APPLICATION BY ANY PARTY. ALL PARTIES WILL

Attachment A

**RECEIVE A COPY OF THE ADJUSTED ORDER.**

**(3) WHERE ANY PARTY FAILS TO PROVIDE, AND UPDATE UPON ANY CHANGE, THE SUPPORT COLLECTION UNIT WITH A CURRENT ADDRESS, AS REQUIRED BY SECTION TWO HUNDRED FORTY-B OF THE DOMESTIC RELATIONS LAW, TO WHICH AN ADJUSTED ORDER CAN BE SENT, THE SUPPORT OBLIGATION AMOUNT CONTAINED THEREIN SHALL BECOME DUE AND OWING ON THE DATE THE FIRST PAYMENT IS DUE UNDER THE TERMS OF THE ORDER OF SUPPORT WHICH WAS REVIEWED AND ADJUSTED OCCURRING ON OR AFTER THE EFFECTIVE DATE OF THE ADJUSTED ORDER, REGARDLESS OF WHETHER OR NOT THE PARTY HAS RECEIVED A COPY OF THE ADJUSTED ORDER.**

A) This action was submitted to the Supreme Court this 16th day of August, 2010.
The Defendant was served personally ☒ *within* OR ☐ *outside* the State of New York.
The Defendant has appeared and waived his or her right to answer.

B) Plaintiff presented a *Verified Complaint* and *Affidavit of Plaintiff* as written proof constituting the facts of the matter.

[redacted]

[redacted]

Any ancillary issues were settled by written Marital Settlement Agreement and Stipulated Parenting Plan.

C) The Court accepted written proof of Defendant's military status.
The Plaintiff's address is 2035 Seagirt Blvd. Apt. 1G, Far Rockaway, NY 11691, and Social Security number is 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. The Defendant's address is 2045 Seagirt Blvd. Apt. 3B, Far Rockaway, NY 11691, and Social Security number is 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.

NOW on motion of Adrian Emmerson Busby, Plaintiff Pro Se, it is:

[redacted]

i[redacted]

~~IT ORDERED~~, ADJUDGED ~~AND DECREED~~ that the marriage between Adrian Emmerson Busby,

Plaintiff, and Virginia Dawn Busby, Defendant, is hereby dissolved by reason of: ADULTERY (DRL §170(4)); and it is further

[redacted]

adult[redacted]

([redacted]

[redacted]

[redacted]

;[redacted]

[redacted] ADJUDGED that Plaintiff shall have custody of the minor child(ren) of the marriage, i.e.:

| *Name* | *Social Security #* | *Date of Birth* |
|---|---|---|
| Xavier Marquis Busby | 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 | 10/14/2002 |
| Zander Avery Busby | 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 | 06/26/2005 |
| Keagen Donovan Busby | 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 | 06/22/2007 |

and it is further;

[redacted] **ORDERED AND ADJUDGED** that Defendant shall have visitation with the minor child(ren) of the marriage in accordance with the parties' Stipulated Parenting Plan; and it is further;

[redacted]**ORDERED AND ADJUDGED** that there are no court orders with regard to custody, visitation or maintenance to be continued; and it is further;

[redacted] **ORDERED AND ADJUDGED** that no maintenance shall be awarded to either party; and it is further;

ORDERED AND ADJUDGED that equitable distribution shall be pursuant to the parties' stipulation of settlement, and it is further

**ORDERED AND ADJUDGED** that Defendant shall pay to Plaintiff, as and for the support of the parties' unemancipated child(ren), namely:

| *Name* | *Date of Birth* |
|---|---|
| Xavier Marquis Busby | 10/14/2002 |
| Zander Avery Busby | 06/26/2005 |
| Keagen Donovan Busby | 06/22/2007 |

the sum of $0.00 per month, commencing on the entry date of this Judgment of Divorce, and to be paid to directly, together with such dollar amounts or percentages for the care of the children as set forth below in accordance the parties' Settlement Agreement. Such Agreement is in compliance with DRL §240(1-b)(h) because:

The parties have been advised of the provisions of DRL Sec. (1-b); the unrepresented party, if any, has received a copy of the Child Support Standards Chart promulgated by the Commissioner of Social Services pursuant to Social Services Law Sec. 111-I; the basic child support obligation, as defined in DRL Sec. 240(1-b), presumptively results in the correct amount of child support to be awarded, and the amount attributable to the non-custodial parent is $816.342331333236 per month; the amount of child support agreed to in this action deviates from the amount attributable to the non-custodial parent, and the Court has approved of such agreed-upon amount based upon the reasons set forth in the Findings of Fact and Conclusions of Law, which are incorporated herein by reference; and it is further;

**ORDERED AND ADJUDGED** that the Marital Settlement Agreement entered into between the parties on the 3 day of June, 2010 a copy of which is on file with this Court and incorporated herein by reference, shall survive and shall not be merged into this judgment, and the parties are hereby directed to comply with all legally enforceable terms and conditions of said agreement as if such terms and conditions were set forth in their entirety herein, and this Court retains jurisdiction of this matter concurrently with the Family Court for the purposes of specifically enforcing such of the provisions of said Agreement as are capable of specific enforcement to the extent permitted by law with regard to maintenance, child support,

custody and/or visitation, and of making such further judgment as it finds appropriate under the circumstances existing at the time application for that purpose is made to it, or both; and it is further;

[redacted] **ORDERED AND ADJUDGED** that a separate Qualified Medical Child Support Order ☒ shall ☐ shall not be issued simultaneously herewith; and it is further;

[redacted] **ORDERED AND ADJUDGED** that, pursuant to the parties' Marital Settlement Agreement, a separate Qualified Domestic Relations Order ☐ shall ☒ shall not be issued simultaneously herewith o[redacted] and it is further;

~~**ORDERED AND ADJUDGED** that, pursuant to the parties' agreement, this Court shall ... in income deduction ... and it is further;~~

ORDERED AND ADJUDGED that the Plaintiff is the person legally responsible to supply health insurance benefits to the Children; and it is further

[redacted]. **ORDERED AND ADJUDGED** that Wife is authorized to resume use of the prior name: Moss.

[redacted]. **ORDERED AND ADJUDGED** that Defendant shall be served with a copy of this judgment, with notice of entry, by the Plaintiff within 20 days of such entry.

Dated: August 16, 2010
ENTER:

No. 197324

STATE OF NEW YORK, COUNTY OF QUEENS, SS: I, ALEXIS CUFFEE, FIRST DEPUTY COUNTY CLERK QUEENS COUNTY, DO HEREBY CERTIFY THAT I HAVE COMPARED THIS COPY WITH THE ORIGINAL FILED OR RECORDED IN MY OFFICE ON 1/10/2011 AND THAT IT IS A CORRECT TRANSCRIPT THEREFROM AND OF THE WHOLE OF THE ORIGINAL.

WITNESS MY HAND AND SEAL OF SAID COUNTY AND COURT ON 02.14.2011

[signature]
FIRST DEPUTY COUNTY CLERK

[signature]
J.S.C.
MARY ELLEN FITZMAURICE

[signature: Alexis Cuffee]
1st DEPUTY CLERK

QUEENS COUNTY CLERK
FILED
RECORDED
2011 JAN 10 AM 9:11

Tamara L Clark

15402 NE 22nd Ave., Vancouver, WA 98686

January 14, 2012

Honorable Judge Harold Baer, Jr.
500 Pearl Street
New York, NY 10007

Re: Adrian Busby

Dear Honorable Judge,

This letter is in regard to my association with Adrian. He and I first met in 2003 when he transferred to Amica's office in Phoenix, AZ where we both worked. He had just been promoted to a Bodily Injury Specialist and I was a rookie Claims Adjuster. I was his first contact in Arizona, as I was sent to the airport to pick him and his small family up.

I referred to Adrian often as I learned my job. He taught me many useful skills as an adjuster. We became personal friends as well and our friendship continues. I've watched as Adrian's family has grown and changed over the years and as his career has changed.

I have always known Adrian to be a man of integrity; he has an excellent work ethic, and has always been upstanding in character. He served our nation honorably in the US Military, he had a long and successful career at Amica where he was initially hired, left to serve in the Military, and then re-hired. Amica is known to have the strictest and most competitive hiring practices in the Insurance Industry. Prior to his acceptance at the FBI he had been promoted to Claims Supervisor, which is a difficult promotion to get, and actually declined the position so that he could begin his dream career with the FBI.

I was in shock and disbelief at the accusations made against Adrian, which has led us all to this point today. I can't imagine that Adrian would do the things he has been convicted of and that he would ever jeopardize his career with the FBI and the safety and well-being of his three sons whom he has sole custody of. I don't understand why the FBI did not handle these matters internally and continue to train and develop Adrian in his career path, but instead looked to make an example of him and take him from his three young children.

Up to this point, Adrian has had an impeccable reputation. He is a loving and devoted father, an excellent employee and co-worker, and a good friend. It is my prayer that all of the above will be taken into consideration as you make your decision that will surely effect not only Adrian's life, but his children's and all that know and love him.

Respectfully yours,

Tamara L Clark

Tamara L Clark

Attachment B

State of Oregon

County of Clackamas

Signed or attested before me on January 16, 2012 by

Tamara Clark .

OFFICIAL SEAL
PENNY JONES
NOTARY PUBLIC - OREGON
COMMISSION NO. 454369
MY COMMISSION EXPIRES JANUARY 07, 2015

Penny Jones
(Signature of notarial officer)

My commission expires: January 7, 2015

*Judge **Harold Baer, Jr.***

*My name is **SSG. Stathums** and I am a friend of **Adrian Busby** and we have Been friends for the last twelve years. We met each other in the Army during a tour in S. Korea. I have always known him to be a hard working, up standing person. While serving with Adrian, he demonstrated great integrity, when he risked his rank, by standing up for soldiers' rights, despite pressure from his chain of command to do nothing. Since that time, I have always been able to seek his advice whenever I faced a complicated issue in the military. His moral compassion has led me to make very sound decisions at times regarding doing what is popular versus what is right and fair. Adrian is also a loving father to his children and a good person overall, who genuinely cares about the well being and success of others?*

*If you need to contact me my email address is **kstathums@gmail.com**. Thank you for your time.*

*Sincerely,*

*Ken Stathums*

WYLIE R. BAILEY
NOTARY
NOTARY #055287
EXPIRES: AT MY DEATH

12 Jan 2012
DATE

Honorable Judge Harold Baer, Jr.

Dear Judge Baer,

This communication is in support of Adrian Busby.

I met Adrian on or around June 28, 2010 when he reported to work in El Paso, Texas.  We worked together several days a week.  All of us assigned to our group spent considerable time together and as a result know each other fairly well.

Adrian has shown nothing but a love of country and family in my presence.  Much of the free time we had together was spent discussing family and how to make our country better using our right to vote.  Adrian is currently a disable veteran.

Adrian spoke of the difficulties he had growing up and how he desired to provide a healthy environment for his children that included educational opportunities.  When ever one of our team members had a problem Adrian offered advise and assistance.  I feel that taking Adrian away from his children, who are ill, would hurt them for the rest of their lives.  We are all aware of the problems children have when separated from their parents.

I am aware of the fact that Adrian may have made some errors in the performance of his official duties.  I am also aware and accept the fact that law enforcement agents must be held to a higher standard, but I believe Adrian made a once in a lifetime mistake.  I believe Adrian has learned from this experience and do not understand where incarcerating him will benefit society, teach Adrian more, or help his children.  I ask that you please consider a suspended sentence for Adrian.  I do not believe Adrian presents future danger to society and am comforted by the fact that he still lives near me and my family.

My respects to all those involved in the case.

Charles A. Gomez
6081 Los Pueblos
El Paso, Texas 79912
915-329-7328

January 9, 2012

Honorable Judge Harold Baer Jr.
500 Pearl Street
New York, New York

Dear Sir,

I am writing this letter in support of my son-in-law Adrian Busby. I felt that I needed to do this in order to make sure that the court better understood the kind of man that Adrian is.

Adrian has always strived to make a good life for his family and to ensure that he could do as much as possible for them. He also has always tried to do the best that he could for his country.

After finishing his undergraduate education Adrian worked at a Motel 6 cleaning rooms prior to being employed by AMICA. Adrian then resigned his position and enlisted into the Army as a Combat Engineer. But for an injury to his left shoulder and other injuries; I believe he would have stayed in the Army. After getting a medical discharge Adrian returned to AMICA as an insurance adjuster. During his career with AMICA he worked very hard and excelled to the point where he was promoted to a position that was two levels above where he was currently in at the time. This meant moving to Arizona with his wife and 3 month old son and Adrian did not hesitate to accept the challenge of the new position and a better life for his family.

After the terrorist attack Adrian felt that he needed to try harder to serve his country again and attempted to re-enlist, however due to his previous injury he was unable to do that. At this point Adrian submitted an application to the FBI Academy as well as looked into getting into the Reserves. In the interim Adrian concentrated on his career in the insurance field. At this point his family had grown and he now had two sons.

His supervisors came to him with another promotion which would mean moving to New Jersey bringing his family closer to both of their families. Again Adrian accepted the challenge and was prepared to move to provide the best for his family. Just as they were ready to move Adrian received notification that he had been accepted into the FBI Academy. Adrian accepted immediately due to his desire to serve his country. While he attended the Academy, his wife (my daughter) and two sons moved back to Canada to stay with me, due to the uncertainty of where he would be assigned.

After graduating Adrian was stationed in New York City. Shortly after this they had their third child. Adrian has always worked extremely hard in striving to care for his family and do his job. Unfortunately my daughter was not always very supportive and there were problems in the marriage. As well as trying to start off his career and attempting to salvage his marriage; all three children have medical problems and it fell on Adrian to get

them to appointments, as his wife had left him and as well left the three children with him.

Adrian has spent a long time trying to work things out with his marriage to no avail. At the time he met Yanet he was in a very vulnerable stage in his life. To this day I do not believe that Adrian would ever intentionally do anything to jeopardize his career or put his family at risk in anyway. Adrian in no way profited or gained from this association and in fact he had volunteered to a TDY to Afganistan in 2009 and later a relocation to El Paso to help his country with the ongoing challenges of the area, he also saw this as a great opportunity for his children. Adrian is the most honest and caring person that I have ever met and tries to do his best for everyone. His word and his integrity mean everything to him. His family has always been his top priority and as the sole guardian for his three sons would never knowingly do anything to jeopardize them.

Did Adrian do anything wrong? Maybe. However, if so it certainly was not intentional. It seems hard to believe that this has gone as far as it has. It's puzzling as to why the FBI would not have dealt with this as an internal administrative matter if they felt that Adrian did anything wrong and then dismissed him if they found cause. Instead, for some reason this has been moved into the court system.

If the worse case scenario happens and Adrian is punished with any jail time his children will be greatly affected because he is the sole parent in El Paso, without any financial or emotional assistance from my daughter. We will of course respect any decision that you come to but I wanted to let you know a little of the background of Adrian and his character. Adrian is currently jobless and has been flying back and forth to New York from El Paso for all of his court appearances. His respect for this court and his country would not allow him to do anything less but going forward will be a sizeable challenge.

If you have any questions or there is anything that you would like to discuss please feel free to contact me at any of the numbers listed below.


Respectfully yours,


Constance Moss
613-453-1155 Home
613-389-3600 x 124 Work